# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10404

United States Court of Appeals
Fifth Circuit

**FILED**

September 13, 2016

Lyle W. Cayce
Clerk

MARK A. COWART,

> Plaintiff–Appellee,

v.

ERWIN, SRT Officer,

> Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Former prisoner Mark A. Cowart filed suit against four Dallas County Jail detention officers, including Special Response Team Officer Erwin, pursuant to 42 U.S.C. § 1983 and state law, claiming that the officers beat him without justification. After the officers unsuccessfully argued that Cowart failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), a jury trial ensued. The jury found Erwin liable as to all claims, awarding both compensatory and punitive damages. On appeal, Erwin assails the district court's ruling on her PLRA defense as well as its denial of her post-verdict motions. We affirm.

No. 15-10404

**I**

Cowart originally filed suit against the Dallas County Jail, Officer Erwin and various John Doe officers.  After the district court dismissed the John Doe defendants and the Jail, we vacated the dismissal to permit discovery regarding the identity of other involved officers.[1]  Cowart ultimately proceeded against Erwin and three other detention officers—Officers Garrett, Weeks, and Holt—and asserted claims for excessive force and bystander liability under § 1983, as well as assault under state law.   The officers moved for summary judgment, arguing in relevant part that Cowart failed to comply with the PLRA's exhaustion requirement and that Cowart's claims were barred by qualified and official immunity.  After the district court denied the motion, a magistrate judge held an evidentiary hearing to resolve factual disputes underlying the officers' PLRA defense.

At the hearing, Cowart testified that he handed a grievance form to an officer at the jail on April 22, 2009, just eight days after Cowart's altercation with the officers.  Cowart did not receive a response from the jail's Grievance Board, however, prior to his May 21, 2009 transfer to the custody of the Texas Department of Criminal Justice.  A grievance officer testified that no response, either interim or final, was issued because the Board never received a grievance from Cowart.

Crediting Cowart's testimony, the magistrate judge concluded that Cowart satisfied the PLRA's exhaustion requirement by handing his grievance to a jail staff member.  He determined that the PLRA required nothing further, as the jail's grievance procedures became unavailable to Cowart when he was

---

[1] *Cowart v. Dall. Cty. Jail*, 439 F. App'x 332, 332-33 (5th Cir. 2011) (per curiam).

transferred from the jail's jurisdiction.[2]    The district court adopted the magistrate's findings and conclusions and the suit proceeded to trial.

At trial, the jury heard sharply divergent testimony regarding the altercation between Cowart and the detention officers.  All parties agree that on April 14, 2009, several detention officers conducted a "shakedown" of the tank in which Cowart was housed.  The officers ordered the inmates to line up against the wall and assume a submissive position—on their knees, hands behind their heads, and elbows touching the wall.

Cowart testified that he became uncomfortable in the position and asked to stand, but was denied permission to do so.  He admitted that he stood up anyway, but was forced back to his knees by two officers—Garrett and Weeks— amidst the officers' racial epithets.  Cowart admitted that he "mouthed off" in kind.

According to Cowart, the interaction escalated quickly from there, and we consider the evidence in the light most favorable to him, as the prevailing party.  Presumably in reaction to Cowart's verbal responses, Erwin walked in front of Cowart, who was on his knees and held in position by Garrett and Weeks, and punched him twice in the face.  Immediately after, a "swarm" of officers took Cowart to the ground and began beating him; officers kicked, punched, and stomped upon Cowart, and sprayed him with mace.  At some point, Cowart temporarily lost consciousness.  Eventually, the officers attempted to lift Cowart to his feet exclusively by his arms—now handcuffed behind him—causing Cowart great pain.  In response to his protests, Cowart was sprayed again with mace by Officer Holt and dropped on his face.  Cowart

---

[2] *See, e.g.*, *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015) (holding that a county jail's administrative remedies became unavailable after an inmate was transferred beyond the county jail's jurisdiction); *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) (same); *Rodriguez v. Westchester Cty. Jail Corr. Dep't*, 372 F.3d 485, 488 (2d Cir. 2004) (same).

was subsequently removed from the tank and escorted to the nurses' station by multiple officers, including Erwin. En route, an unidentified officer slammed Cowart's head into the elevator wall. At no point did Cowart physically threaten the officers or fight back.

Cowart's testimony was largely corroborated by five inmate witnesses. Each recalled that multiple officers attacked Cowart and that Cowart was not resisting. However, while each inmate could identify Erwin, or an officer matching Erwin's description, none could identify Erwin's co-defendants as participants.

Testifying officers presented a different story. Erwin testified that she took Cowart down to the ground when he "came off the wall" and cursed at the officers. She denied punching Cowart. Other officers had difficulty recalling the events, but each testified that no officer punched, kicked, stomped upon, or otherwise used unreasonable force against Cowart. Multiple officers claimed Cowart was resisting and only minimal force was used to subdue him. An incident report completed by Erwin described Cowart as "belligerent" and reported that he was taken down with "minimal force."

Despite the conflicting testimony, it is undisputed that Cowart was transported to Parkland Hospital later that evening. There, an emergency room physician diagnosed Cowart with contusions of the face, scalp, and neck, a neck sprain, and a ruptured eardrum, and noted that Coward had tenderness and swelling on his right hand. At trial, the physician testified that such injuries were consistent with severe trauma. Cowart testified that he still experiences a ringing in his ear and has difficulty gripping objects due to nerve damage in one hand, which limits his employment options.

The jury returned a verdict finding Erwin alone liable on all claims and awarded Cowart $10,000 in compensatory damages and $4,000 in punitive damages. The district court entered judgment on the verdict, denying Erwin's

renewed post-verdict motion for judgment as a matter of law or a new trial. Erwin timely appealed.

On appeal, Erwin challenges the district court's determination that Cowart complied with the PLRA's exhaustion requirement, as well as the district court's denial of her post-verdict motion for judgment as a matter of law and for new trial.

## II

We review the district court's legal rulings regarding exhaustion of administrative remedies de novo and its factual findings for clear error.[3]

We review the district court's denial of a motion for judgment as a matter of law de novo, "applying the same standard as the district court."[4] When a case is tried to a jury, a motion for judgment as a matter of law "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[5] "In resolving such challenges, we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party," and will uphold the verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."[6]

Finally, we "review a district court's denial of a motion for a new trial for abuse of discretion."[7] But when the district court has denied a new trial motion, "[o]ur review is particularly limited" and "we must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—

---

[3] *Dillon v. Rogers*, 596 F.3d 260, 273 (5th Cir. 2010).

[4] *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)).

[5] *Id.* (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)).

[6] *Id.* at 273 (quoting *Foradori*, 523 F.3d at 485); *see also* FED. R. CIV. P. 50(a).

[7] *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 770 (5th Cir. 2009)

No. 15-10404

points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]."[8]

## III

We first address Erwin's threshold argument that Cowart failed to exhaust administrative remedies. The PLRA requires prisoners to exhaust "such administrative remedies as are available" prior to filing a § 1983 action regarding prison conditions.[9] The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted.[10] "This circuit has taken a 'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies *properly*.'"[11] Because "exhaustion is an affirmative defense, the burden is on [Erwin] to demonstrate that [Cowart] failed to exhaust available administrative remedies."[12]

It is undisputed that the Dallas County jail provides a two-step grievance procedure: First, a prisoner must submit a written grievance to any staff member at the jail (Step 1); second, a prisoner must appeal an adverse decision to the Detention Service Manager (Step 2). According to the jail's inmate handbook, the Grievance Board, upon receiving a grievance, "sends a[n] interim reply to the inmate showing grievance receipt, and the grievance

---

[8] *Id.* (alterations in original).

[9] 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

[10] *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (citing *Jones*, 549 U.S. at 218).

[11] *Id.* at 299-300 (5th Cir. 2015) (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)).

[12] *Dillon*, 596 F.3d at 266 (citing *Jones*, 549 U.S. at 216).

criteria the grievance is judged on." The Board sends the interim reply to the prisoner within 15 days of receipt; an answer within 60 days.

Erwin does not contest the magistrate's factual finding that Cowart submitted a Step 1 grievance to a jail staffer. She further acknowledges that the parties previously stipulated that Step 2 of the process was not at issue, given Cowart's transfer to TDCJ custody prior to the lapse of the Board's 60-day response period.[13]

Erwin contends that Cowart was required to appeal, or take some other action, when he failed to receive a timely *interim* response from the Board. Erwin asserts that Cowart was familiar with the grievance process and acknowledged that he "should have known" something had gone amiss when he did not receive a timely interim reply. Based on this argument and according to Erwin's timeline, Cowart had two weeks prior to his transfer to rectify the improper processing or non-receipt of his grievance. While we question Erwin's timeline, which assumes both that a jail staffer immediately delivered the Cowart's grievance and that the grievance was filed that same day, it is irrelevant to our holding.

Erwin primarily relies on this court's opinion in *Wilson v. Epps*.[14] In *Wilson*, we held that when a prison fails to respond timely "at some preliminary step in the grievance process," a prisoner is "entitle[d]" to "move on to the next step."[15] We explained that "it is only if the prison fails to respond at the *last* step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can

---

[13] *See King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015) (holding that a county jail's administrative remedies became unavailable after an inmate was transferred beyond the county jail's jurisdiction); *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) (same); *Rodriguez v. Westchester Cty. Jail Corr. Dep't*, 372 F.3d 485, 488 (2d Cir. 2004) (same).

[14] 776 F.3d 296 (5th Cir. 2015).

[15] *Id.* at 301.

No. 15-10404

advance."[16]   We held in that case that Wilson failed to exhaust available remedies when he did not continue on to the next available step after the prison's response period on a preliminary step had lapsed.[17]

The grievance policies of the Dallas County Jail indicate that *Wilson* does not apply on the facts before us.  The jail's Grievance Plan provides that "[i]f an inmate is not satisfied with a Board's *findings*, the inmate may appeal to the Detention Service Manager, Quality Assurance Unit."[18]  The Plan further indicates that the "Board's *findings*" are delivered to an inmate in a "written reply . . . within 60 days of the initial grievance receipt."  An interim response does not contain "findings" that a prisoner may appeal.  Nor does any other provision in the plan permit an inmate to appeal the lack of a timely interim reply.  Here, unlike in *Wilson*, the policies afforded Cowart no "next step" once the response period for an interim reply had lapsed, but pending his receipt of a written answer with findings.

Essentially, Erwin reads an additional requirement into the policies— one requiring prisoners to object in some way if they do not receive a timely interim reply.  However, "[e]xhaustion is defined by the prison's grievance procedures, and courts neither *may add to* nor subtract from them."[19]  The district court did not abuse its discretion in concluding that Cowart complied with the PLRA's exhaustion requirement.

## IV

Erwin contends that insufficient evidence supports the jury's verdict on his § 1983 claims for excessive force and bystander liability, the jury's finding that Erwin was not entitled to official immunity under state law, and the jury's

---

[16] *Id.* (emphasis in original).

[17] *Id.* at 302.

[18] The inmate handbook similarly provides "If you disagree with the Board's findings, you may appeal to the Chief Deputy, Office of Inmate Housing."

[19] *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (emphasis added).

award of compensatory and punitive damages. She further argues that the district court erred by denying Erwin qualified immunity against Cowart's § 1983 claims and by denying a requested jury instruction pertinent to Cowart's claim for assault. Finally, Erwin challenges the district court's denial of her motion for new trial.

## A

In evaluating excessive force claims under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[20] Though "[t]he focus of this standard is on the detention facility official's subjective intent to punish,"[21] intent is determined by reference to the well-known *Hudson* factors—"the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."[22] The amount of force used must be more than *de minimis*, "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"[23] A plaintiff need not show significant injury, although the extent of the injury may supply insight as to the amount of force applied.[24]

Erwin concedes the evidence supports a finding that she punched Cowart twice in the face but claims the record supports nothing more. She further

---

[20] *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

[21] *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993).

[22] *Kitchen v. Dall. Cty.*, 759 F.3d 468, 477 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Hudson*, 503 U.S. at 7); *see also Valencia*, 981 F.2d at 1449.

[23] *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

[24] *See Wilkins v. Gaddy*, 559 U.S. 34, 37-39 & n.2 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

avers that the punches did not involve the level of force required for an Eighth Amendment violation.

Erwin's position is that the "objective evidence" offered at trial, which included photographs, medical records, and testimony from medical professionals, cannot be contradicted by Cowart's or other witnesses' testimony. Erwin's "objective evidence" argument is derived from her misplaced reliance on two opinions in which this court considered objective evidence—in both cases, a videotape—to determine whether factual disputes existed at the summary judgment stage.[25] Those cases are factually inapposite. In the present case, the objective evidence is not necessarily inconsistent with eye witness accounts of what transpired at the jail on the day in question. There were material factual disputes to be resolved by a factfinder, and we apply the long-standing principle of deference afforded to verdicts rendered by a jury. We "review all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence."[26]

The evidence in this case supports the jury's verdict finding Erwin liable for excessive force. We note that the questions put to the jury did not differentiate between Erwin's punches and the subsequent melee; the jury was simply asked whether the officers used excessive force. Accordingly, in reviewing the verdict, we consider whether the jury could have found that Erwin used excessive force by punching Cowart, by beating him further alongside other officers, or both.

---

[25] *Schneider v. Kaelin*, 569 F. App'x 277, 279-80 (5th Cir. 2014) (per curiam); *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

[26] *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 525 (5th Cir. 2009).

No. 15-10404

As Erwin admits, a reasonable jury could find that she punched Cowart twice in the face. The record contravenes Erwin's characterization of the punches as a mere "malevolent touch" that involved only *de minimis* force. Though an excessive force plaintiff need not show significant injury, the extent of injury may supply insight as to the force applied.[27] Photographs of Cowart's injuries reveal bruising on Cowart's face and ear; hospital records report contusions to his face, as well as a ruptured ear drum; and the emergency room physician testified that "clearly repeated blows [to the head] could give you these sorts of findings, as well as could a single blow." The jury was entitled to tie these injuries to Erwin's punches and conclude that the injuries were indicative of excessive force. We reject Erwin's implication that the confused nature of the attack erodes a causal connection between her conduct and Cowart's injuries so as to insulate her from liability.

Regardless, the jury was entitled to find an excessive force violation based on other *Hudson* factors, namely, the use of force despite the lack of a perceived threat or need for force. There was evidence that Cowart was restrained and non-threatening when Erwin punched him. This version of events, which we must accept at this stage, supports a finding of excessive force—"courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[28] It is notable that even Erwin testified that, assuming she had punched him, such force would be excessive.

Erwin suggests that no testimony tied her to the beating that followed her punches. However, Cowart and multiple inmate witnesses testified that Erwin participated in the fray. The testimony established that Cowart was

---

[27] *See Wilkins v. Gaddy*, 559 U.S. 34, 37-39 & n.2 (2010).
[28] *Kitchen v. Dall. Cty.*, 759 F.3d 468, 479 (5th Cir. 2014).

restrained, if not incapacitated, during this portion of the assault. Drawing all inferences in Cowart's favor, as we must, sufficient evidence supports the jury's finding that Erwin used unjustified force on Cowart beyond her two initial punches.

Erwin nevertheless claims that she is entitled to qualified immunity. Qualified immunity shelters state officials from liability only "to the extent that the officials' actions do not violate clearly established statutory or constitutional rights."[29] "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[30] In defining clearly established law, we must avoid a high level of generality and instead consider "whether the violative nature of *particular* conduct is clearly established."[31]

We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not "use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated."[32] Reasonable officers had fair notice that such conduct under the circumstances violated Cowart's right to be free from excessive force.[33]

---

[29] *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (internal quotation marks omitted).

[30] *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012).

[31] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

[32] *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *see also Kitchen v. Dall. Cty.*, 759 F.3d 468, 479 & n.27 (5th Cir. 2014) (citing pre-2009 cases holding that the use of force against a nonresisting inmate violates the Eighth Amendment); *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006); *Gomez v. Chandler*, 163 F.3d 921, 922, 924-25 (5th Cir. 1999).

[33] *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).

No. 15-10404

We do not address Erwin's challenges to the jury's findings of § 1983 bystander liability or assault under state law, as Erwin's liability for excessive force is alone sufficient to uphold the verdict.

**B.**

Erwin challenges the jury's award of damages. Erwin first argues that the $10,000 in compensatory damages is unsupported by the evidence. The jury was instructed to consider damages for physical pain and mental anguish, physical impairment, and loss of earning capacity. When a damage award includes recovery for pain and suffering, which are "to a large degree, not susceptible to monetary quantification," the jury "has especially broad leeway."[34]

We are satisfied that the award of $10,000 in compensatory damages falls within the range of permissible awards supported by the evidence in this case. Cowart testified that he "was in so much pain and blood [was] everywhere," that his arms and hands were "completely numb," that he heard a "constant ringing" in his left ear, and that he was screaming from the pain. The inmate witnesses corroborated Cowart's report of pain and suffering at the scene. Photographs taken after the altercation show redness and injury to Cowart's face, ear, neck, and back. Medical records and testimony further support Cowart's account of his injuries and pain. A triage nurse observed bruising and redness on Cowart's face and neck and noted that Cowart was complaining of throbbing in his left eye and ear and his right hand, as well as diminished hearing. The treating physician diagnosed Cowart with a perforated ear drum, a neck sprain, multiple contusions, and swelling and tenderness on his right hand. When asked, the physician confirmed that

---

[34] *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991) (internal quotation marks omitted).

No. 15-10404

Cowart's diagnoses are consistent with severe trauma. Compensatory damages in the amount of $10,000 is not "entirely disproportionate to the injury sustained."[35]

Erwin next asks this court to exercise its "discretionary moral judgment" and set aside the jury's award of $4,000 in punitive damages. She contends the award must be set aside because she lacked the requisite mental state and because the damages serve no deterrent value since Erwin no longer works in law enforcement. Erwin does not challenge the quantum of punitive damages, only the fact of their imposition.

A jury may award punitive damages in a § 1983 action when an official's conduct is "'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights."[36] As Cowart correctly notes, the jury's verdict on Cowart's excessive force claim—premised on a finding of malicious intent—permitted the jury to impose punitive damages.[37] Additionally, Erwin fails to realize that punitive damages are aimed not only at her, but also to "deter h[er] *and others like h[er]* from similar conduct in the future."[38] Finally, the "discretionary moral judgment" of whether to award punitive damages when the legal threshold is met belongs to the jury, not this court.[39]

---

[35] *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) (internal quotation marks omitted).

[36] *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

[37] *See Smith*, 461 U.S. at 51-55; *see also Cooper v. Morales*, 535 F. App'x 425, 432 (5th Cir. 2013) (per curiam) (citing *Jones v. Conner*, 233 F.3d 574, at *1 (5th Cir. 2000) (per curiam) (unpublished)).

[38] *Smith*, 461 U.S. at 55 (quoting Restatement (Second) of Torts § 908(1) (1977) (emphasis added)).

[39] *Id.*

No. 15-10404

**C**

We finally turn to the district court's denial of Erwin's motion for new trial.  Erwin contends that a new trial is warranted because (1) the testifying inmate witnesses likely conspired en route to the trial to produce corroborating testimony, (2) the jury was confused about damages, and (3) there is "no legally principled basis" for finding Erwin alone liable.

The record does not support Erwin's claim that the inmate witnesses fabricated a joint tale.  The inmate witnesses were no more consistent in their accounts of the events than the testifying officers.  Moreover, Erwin asked each inmate if they had conversed during cross-examination.  Apparently the jury did not find the contrived-testimony theory convincing, and we do not "reweigh the evidence or assess the credibility of witnesses."[40]

Erwin argues that the jury was confused by a particular interrogatory and read it to require a damages award.  The jury sent a question to the district court during deliberations indicating that the jury was confused by a specific interrogatory and "d[id] not want to consider damages for the defendants."  We agree with the district court that a fair reading of the record indicates that the jury initially interpreted the interrogatory to permit damages *in favor of the defendants*, as opposed to Cowart.  However, the district court's responses advised the jury that *if* it reached the issue of damages, damages could only be awarded to Cowart.  The responses provided to the jury do not evince a mandatory damages instruction, as Erwin suggests.

Erwin maintains that she should not have been found solely liable because trial testimony indicated that multiple officers attacked Cowart.  It is of course no defense to Erwin's liability that a jury did not find her co-defendants liable by a preponderance of the evidence.  As both Cowart and

---

[40] *United States v. Owens*, 683 F.3d 93, 101 (5th Cir. 2012).

the district court noted and our review of the record confirms, the jury's findings as to Erwin's co-defendants can be attributed to the inmate witnesses' repeated identification of Erwin and her actions in contrast to their inability to identify Erwin's male co-defendants.

In sum, the result in this case does not reflect a miscarriage of justice and the district court acted within its discretion in denying Erwin's new trial motion.

*    *    *

The judgment of the district court is AFFIRMED.

16