# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41154

Consolidated w/16-41533

MARVIN WADDLETON, III,

  Plaintiff–Appellant,

v.

BERNADETTE RODRIGUEZ; DACHO ONGUDU; AIMEE SALINAS,

  Defendants–Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**
September 7, 2018

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-79

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Texas prisoner Marvin Waddleton, III brought suit under 42 U.S.C. § 1983, alleging excessive use of force by correctional officers. The district court granted the officers' motion for summary judgment. We affirm the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41154 c/w 16-41533

I

Marvin Waddleton, proceeding pro se, filed a § 1983 suit against four correctional officers—Bernadette Rodriguez, Dacho Ongudu, Aimee Salinas, and an unknown officer—alleging the use of excessive force against him in violation of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Waddleton asserted that on October 4, 2012, correctional officers used excessive force in an incident in which a handcuffed Waddleton was "slam[med] on the ground" by Salinas, Rodriguez, and the unknown officer, and then placed in leg shackles that Ongudu squeezed against his ankle. These actions allegedly caused permanent injury. This incident began after Candace Moore, the law librarian, called officers to remove Waddleton from the law library for allegedly threatening her. Waddleton sought relief in the form of compensatory and punitive damages.

Following a *Spears*[1] hearing, the magistrate judge ordered service of process on the four defendants. The unknown officer and Rodriguez were not successfully served. Ongudu and Salinas denied the allegations and asserted qualified and Eleventh Amendment immunity from suit.

Three months later—two months after the district court entered a scheduling order and one month prior to the end of discovery—Waddleton filed a motion for leave to amend his complaint to add Candace Moore as a defendant asserting that she harassed him, made false accusations against him, and retaliated. The magistrate judge denied leave to amend because the proposed amended complaint was "not sufficiently related" to the "straight forward claim for alleged excessive use of force," as it involved "a new defendant and new claims," and would require the extension of current deadlines resulting in "unnecessary[y] delay" and an inefficient resolution of

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

the case. The district court affirmed the ruling as "a result within [the magistrate judge's] discretion," agreeing that adding a new party would "cause unnecessary delays."

Ongudu and Salinas moved for summary judgment. Attached to the motion was a lengthy use-of-force report, a twenty-minute video recording of the incident, and Waddleton's post-incident medical records. The report stated that use of force was necessary to regain control of Waddleton after he "intentionally pull[ed] away from staff." It also included a use-of-force injury report indicating that Lanelle Roell, a nurse, was unable to complete a physical examination of Waddleton, but that he had no visible injuries despite his complaints of pain in his wrists and left ankle. The medical records reflect that since this incident, Waddleton has continued to complain of pain and numbness allegedly stemming from the use of force. Medical records show some nerve damage that could take years to heal, but do not opine as to the cause of this damage. The records also diagnose subjective neuropathy in the hands, and "shoulder pain with radiculopathy due" to the use of force.

The video recording of the use of force is approximately twenty minutes long and continually captures the incident from Waddleton being escorted from the law library to his placement in a cell. At the beginning of the video, Waddleton is handcuffed and holding his cane. He is advised that he is charged with threatening Moore—to which he objects. While being escorted to a cell, Waddleton uses profanity, kicks open a door, and states he is "pissed off." Rodriguez then orders Salinas and the unknown officer to place Waddleton against the wall. As they escort Waddleton towards the wall, he quickly turns away from the wall and towards the officers. They react by forcing Waddleton to the ground and restraining him. Rodriguez orders Waddleton not to resist and instructs the unknown officer to remove his knee from Waddleton's torso. Additional officers arrive, including Ongudu, and an unknown officer places

ankle cuffs on Waddleton.  Waddleton is placed on a gurney and strapped down.

Ongudu holds down Waddleton's ankles for approximately twelve minutes while Waddleton is transported on the gurney.  During this period, Waddleton twice appears to resist the restraints.  He also attempts to strike an officer.  On at least six occasions, Waddleton complains about the ankle cuffs and asks Ongudu to stop squeezing the cuffs.  Twice he asks Ongudu if he understands English.  The level of pressure applied by Ongudu appears consistent, and he does not respond to Waddleton.  At one point, Waddleton tells Rodriguez that his legs are bleeding and that "Ongudu done cut me." Upon arrival at the housing unit, Waddleton grabs hold of the gurney while the officers try to move him.  When the leg restraints are removed, Waddleton states that his legs are bleeding because the leg restraints were used incorrectly.

Waddleton filed a cross-motion for summary judgment in which he addressed aspects of the video.  He admits to making a sudden action which resulted in his being forced to the ground, but states this is because he was losing his balance.  He denies that he aggressively pulled away from Salinas, that he tried to strike an officer, that he acted belligerently, and that he refused a direct order or resisted.  He states that evidence gleaned from the video is erroneous because "the DVD has been altered and parts deleted, the volume of the Officers has been turned down and has raised my voice louder to slander my actions."  His motion also asserts claims of retaliation and denial of access to the courts against Moore and briefly asserts that Roell and "Ms. Hudson" refused to treat his injuries adequately after the incident.

Waddleton also filed a motion regarding draft reports and disclosures, in which he requested the disclosure of his medical records.  This was seemingly in response to an order sealing Waddleton's medical records.  The magistrate

judge denied Waddleton's motion as moot because the sealed records had been provided to Waddleton. A few months later, Waddleton filed a motion to transfer the case pursuant to 28 U.S.C. § 1404, alleging bias on behalf of the magistrate judge and district judge. The court did not expressly act upon that motion.

The magistrate judge recommended that the district court grant Ongudu and Salinas's motion for summary judgment, concluding they were entitled to Eleventh Amendment immunity in their official capacities and qualified immunity in their individual capacities. The magistrate judge also recommended dismissing the case with prejudice against the unserved defendants. Applying the Eighth Amendment subjective-intent test, the magistrate judge found no evidence that force was administered maliciously and sadistically. The magistrate judge stated that the video demonstrates that Waddleton was not cooperative, that the correctional officers were "calm, under control and professional" throughout the incident, and that there was no visible attempt to injure Waddleton. He also states that "Officer Ongudu has his hands on Plaintiff's ankles, but he is not squeezing or leaning on Plaintiff's ankles." The magistrate judge found that while Waddleton did allege soreness and nerve pain after the use of force, "no medical provider identified the [use of force] as the cause for" this pain, and Waddleton may have had a "previous degenerative disorder[]."

Waddleton filed objections, which focused upon Candace Moore, and for the first time sought to add Jacquelyn Jameson and Ms. Hudson as defendants. The district court adopted the magistrate judge's findings and conclusions and granted summary judgment, dismissing the excessive force claim against all four defendants with prejudice. The district court applied the Fourth Amendment "objective reasonableness" test in determining that there was no excessive force. Waddleton appealed.

After final judgment was entered, the magistrate judge granted Waddleton's request to forward the record to this court but denied Waddleton's request for a personal copy. Waddleton appealed this post-judgment order, and the appeals have been consolidated.

## II

Section 1983 is not a general tort remedy available to "all who suffer injury at the hands of the state or its officers."[2] A § 1983 plaintiff must show that "he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."[3] We review the district court's grant of summary judgment de novo.[4] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] But when a defendant asserts a qualified-immunity defense against a § 1983 claim, the plaintiff has the burden of establishing a genuine issue of material fact as to whether the allegedly wrongful conduct violated a clearly established constitutional right.[6]

## III

The principal issue on appeal is whether Salinas and Ongudu were entitled to qualified immunity from Waddleton's § 1983 excessive force claim. Waddleton alleged that Salinas and Ongudu used excessive force in violation of his Eighth Amendment constitutional right to be free from cruel and unusual punishment. Waddleton also alleged a violation of his Fourteenth Amendment right to be free from cruel and unusual punishment, but that

---

[2] *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).

[3] *Irving v. Thigpen*, 732 F.2d 1215, 1216 (5th Cir. 1984) (per curiam).

[4] *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 234 (5th Cir. 2017).

[5] FED. R. CIV. P. 56(a).

[6] *See, e.g.*, *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 476 (5th Cir. 2014); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

claim lacks merit because the Fourteenth Amendment protects pretrial detainees, not convicted prisoners.[7] The district court held there was no excessive force because Salinas and Ongudu's actions were "as a matter of law, objectively reasonable." This was in error because only Fourth Amendment excessive force claims are governed by this objective reasonableness test.[8] Nonetheless, this panel may affirm the district court's judgment on any grounds supported by the record.[9]

## A

"In evaluating excessive force claims under the Eighth Amendment, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[10] This standard focuses on "the detention facility official's subjective intent to punish."[11] To determine intent, this court references the "well-known *Hudson* [*v. McMillian*] factors" to determine whether the use of force was constitutionally permissible.[12] These factors are: (1) "the extent of injury suffered by an inmate," (2) "the need for application of force," (3) "the relationship between" the need for force and the amount of force used, (4) "the

---

[7] *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (explaining that cases in the Fourteenth Amendment context are not demonstrative in the Eighth Amendment context for several reasons including that pretrial detainees cannot "be punished at all, much less 'maliciously and sadistically'" (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977))).

[8] *See, e.g., Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (analyzing a § 1983 Fourth Amendment excessive force claim under the objective reasonableness standard).

[9] *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 307 (5th Cir. 1997).

[10] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).

[11] *Id.* (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993)).

[12] *Id.* at 452-53.

7

threat 'reasonably perceived by the responsible officials,'" and (5) "any efforts made to temper the severity of a forceful response."[13]

Usually a court must adopt the plaintiff's version of the facts at summary judgment.[14] However, if record evidence clearly contradicts the plaintiff's allegations, a court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[15] For example, in *Scott v. Harris*, the Supreme Court ignored the plaintiff's statement of the facts when a videotape in the record told "quite a different story."[16] But unlike in *Scott*, Waddleton challenges the authenticity of the video, alleging it "has been altered and parts deleted, the volume of the Officers has been turned down and has raised my voice louder to slander my actions."[17] However this allegation is conclusory, unsupported by the record, and insufficient to show the district court erred.[18] The video captures the use of force in its entirety and there are no sudden jumps, breaks, or other indications that the video is altered. This court will not adopt facts that are clearly contradicted by the video[19] such as Waddleton's denial that he acted belligerently or resisted the officers.

## B

With regard to Salinas, Rodriguez, and the unknown officer, the use of force was triggered by Waddleton's sudden movement away from the wall and towards the officers. Salinas and the other officers reacted by forcing

---

[13] *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

[14] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[15] *Id.* at 380.

[16] *Id.* at 379.

[17] *Cf. id.* at 378 ("There are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.").

[18] *See Freeman v. Sims*, 558 F. App'x 412, 413 (5th Cir. 2014) (per curiam) (unpublished) (dismissing as "conclusory, speculative, and insufficient to show that the district court erred in granting summary judgment," an argument that a video recording in an excessive force case was altered).

[19] *See Scott*, 550 U.S. at 738.

Waddleton to the ground and restraining him. Waddleton alleged that this use of force resulted in wrist, shoulder, and back pain, and medical records verify that Waddleton has continued to complain of such pain. There were no signs of visible injuries after the use of force, but the medical records acknowledge "subjective neuropathy affecting" his fingers and "shoulder pain with radiculopathy due [to use of force]."

Viewing the evidence in the light most favorable to Waddleton the use of force could have resulted in injury, so the first *Hudson* factor, "the extent of injury suffered by an inmate,"[20] weighs in Waddleton's favor. However, the other four factors indicate that the use of force "was applied in a good-faith effort to maintain or restore discipline."[21] As to the second and third factors, Waddleton's sudden movement created a need for the use of force and the relationship between the need for force and the amount of force used was appropriate. Waddleton was handcuffed, so less force was necessary,[22] but he made a threatening movement, resisted restraint, and the amount of force used was not "gratuitous."[23] As to factor four, the officers reasonably perceived Waddleton's sudden action as a threat requiring the use of force, even if the movement was caused by a loss of balance. Prison disturbances "may require prison officials to act quickly and decisively."[24] Salinas, Rodriguez, and the unknown officer had to make a real-time evaluation of a potential threat. Prior

---

[20] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

[21] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Hudson*, 503 U.S. at 6-7 (1992)).

[22] *See id.* at 454-55 (explaining that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force," particularly "gratuitous force").

[23] *Cf. id.* (holding that a prison official unconstitutionally used "gratuitous force" when she punched a handcuffed prisoner in the face).

[24] *Hudson*, 503 U.S. at 6.

to this action, Waddleton had kicked open a door, been verbally belligerent, and stated he was "pissed off." Upon review of the video, it was reasonable to perceive Waddleton's sudden movement as a threat. Efforts were also made to "temper the severity of a forceful response"—factor five.[25] Rodriguez attempted to deescalate the situation by instructing Waddleton not to resist, and she instructed the unknown officer to remove his knee from Waddleton's torso once the prisoner was restrained.

Injury alone does not equate to excessive force. The issue is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[26] Four of five *Hudson* factors weigh in favor of Salinas, Rodriguez, and the unknown officer. The video supports the magistrate judge's finding that the officers acted professionally throughout the incident. The force "was applied in a good-faith effort to maintain or restore discipline," and not "maliciously [or] sadistically to cause harm."[27] Waddleton has not established a genuine issue of material fact as to whether this use of force violated his Eighth Amendment rights, and Salinas and the unserved defendants are entitled to qualified immunity.

## C

We next evaluate the actions of Ongudu when he applied pressure to Waddleton's ankles. Ongudu restrained Waddleton's ankles for approximately twelve minutes. During this time, Waddleton twice offered resistance, tried to strike an officer, and held onto the gurney when the correctional officers attempted to move him into his cell. Waddleton also complained multiple times that Ongudu was hurting his ankles, indicated his ankle was bleeding,

---

[25] *See Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

[26] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).

[27] *Hudson*, 503 U.S. at 6-7.

and said that "Ongudu done cut me." No visible injuries were identified after the use of force, but medical records indicate nerve damage near Waddleton's ankle without opining as to the cause.

The first and fifth *Hudson* factors support Waddleton's excessive force claim against Ongudu. The district court erred in adopting the magistrate judge's finding that the nerve damage was not caused by the use of force and was likely due to a preexisting condition. While the injury *could* have been preexisting or caused by the officer who applied the leg restraints, the medical records are inconclusive. Viewing the evidence in the light most favorable to Waddleton,[28] there is a genuine dispute as to whether Ongudu's use of force resulted in nerve damage. Additionally, Ongudu made no efforts to "temper the severity of a forceful response."[29] Waddleton told Ongudu multiple times that his actions were causing pain, yet Ongudu did not respond, nor does he appear to have adjusted the amount of pressure applied.

The other three *Hudson* factors indicate that there was no "subjective intent to punish."[30] Waddleton was in restraints, but he continued to be uncooperative, resisted, and attempted to strike an officer. These actions justify the application of some force. As to the third factor, it does not appear that the amount of force applied was "gratuitous" relative to the need for force. The magistrate judge found that Ongudu "had his hands on Plaintiff's ankles, but he is not squeezing or leaning on" them. The video is inconclusive as to the amount of pressure applied, but it is clear that if Ongudu was squeezing or leaning on Waddleton's ankles, the pressure was not great. Waddleton was in restraints while Ongudu held down his ankles, diminishing the amount of force

---

[28] *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

[29] *Hudson*, 503 U.S. at 7 (1992) (quoting *Whitley*, 475 U.S. at 321).

[30] *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993)).

needed, but no evidence suggests that Ongudu used more force than necessary. It was also reasonable for Ongudu to perceive Waddleton's actions as a threat justifying the need to use force—factor four. Waddleton was uncooperative and belligerent and could still pose a threat while restrained, as evidenced by his near-strike of an officer. Prison officials must react "quickly and decisively" in these scenarios,[31] and it was reasonable for Ongudu to perceive Waddleton's actions as a threat.

This court has held that prison officials may violate an inmate's Eighth Amendment rights when they "use gratuitous force against a prisoner who has already been subdued."[32] In particular, the court has held that use of force is excessive when an officer has punched a handcuffed prisoner in the face,[33] and that "kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances."[34] These examples stand in stark contrast to Ongudu's actions.

The pressure to Waddleton's ankles was "applied in a good-faith effort to maintain or restore discipline," not "maliciously [or] sadistically to cause harm."[35] The video supports the magistrate judge's finding that Ongudu acted in a calm, professional manner, and Ongudu never appeared to apply additional force even when Waddleton cursed, resisted, and insulted him by asking if he understood English. Furthermore, three of five *Hudson* factors weigh in Ongudu's favor. Ongudu tried to restore discipline, not "maliciously

---

[31] *Hudson*, 503 U.S. at 6.

[32] *Cowart*, 837 F.3d at 454 (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002)).

[33] *Id.*

[34] *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 479 (5th Cir. 2014).

[35] *Hudson*, 503 U.S. at 6-7.

and sadistically [] cause harm."[36] There was no Eighth Amendment violation and Ongudu is entitled to qualified immunity and summary judgment.

## D

Waddleton may have also brought suit against the correctional officers in their official capacities.[37] Such a claim is meritless. "[T]he Eleventh Amendment bars recovering § 1983 money damages from [Texas correctional] officers in their official capacity."[38] Waddleton only sought monetary damages, so to the extent the prison officials were sued in their official capacities, Waddleton's claims are barred by the Eleventh Amendment.

## IV

Waddleton also asserts that the district court abused its discretion in denying leave to amend. We review "the district court's denial of leave to amend a complaint under Federal Rule of Civil Procedure 15 for abuse of discretion."[39] Rule 15(a) "evinces a bias in favor of granting leave to amend,"[40] and a district court should not deny leave to amend unless there is a "substantial reason."[41] A district court may abuse its discretion if it denies leave to amend "without any justifying reason appearing for the denial."[42] The Supreme Court has identified several "justifying reasons" including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

---

[36] *Cowart*, 837 F.3d at 452 (quoting *Hudson*, 503 U.S. at 6-7).

[37] *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) ("A *pro se* complaint is to be construed liberally.").

[38] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998)).

[39] *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)).

[40] *Id.* (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000)).

[41] *Id.*; *see also Lowrey*, 117 F.3d at 245 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("The Supreme Court has explicitly disapproved of denying leave to amend without adequate justification . . . .").

[42] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Mayeaux*, 376 F.3d at 425 (holding that a district court may not deny leave to amend unless there is a "substantial reason").

to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."[43]

Waddleton sought to amend his complaint to add four new defendants: Candace Moore, Lanelle Roell, Ms. Hudson, and Jacquelyn Jameson.  In his only formal motion for leave to amend, Waddleton sought to add Moore to litigate claims of retaliation and denial of access to the courts against her. Three months later in his motion for summary judgment, Waddleton sought to add Roell and Hudson on claims of denial of adequate medical care.  Five months after that in his objections to the magistrate judge's memorandum, Waddleton sought to add Jameson for failure to intervene in the use-of-force incident.

The magistrate judge only ruled on the motion to add Moore to the litigation.  He found that because discovery was nearing an end and the "new claims" were "not sufficiently related" to the excessive force claim, granting leave to amend would cause "unnecessar[y] delay" and result in an "[in]efficient resolution of the case."  The district court agreed that adding Moore would result in "unnecessary delays."

When ruling on a motion for leave to amend, the court should "consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation."[44]  The court should also consider "whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action."[45]  If a proposed amendment "essentially pleaded a *fundamentally different* case with new

---

[43] *Foman*, 371 U.S. at 182.

[44] *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982).

[45] *Id.*

causes of action and different parties," a district court would not abuse it discretion in denying leave to amend.[46]  As to Moore, the magistrate judge found that granting leave would be inefficient and that the proposed amended complaint was "not sufficiently related" to the excessive use of force claim.  We agree.

Neither the magistrate judge nor the district court discussed Waddleton's attempt to add Roell and Hudson as defendants in his motion for summary judgment.  This court has held in similar circumstances that a district court should construe a plaintiff's response to a motion for summary judgment as a motion to amend her complaint.[47]  However, the same rationale that the magistrate judge applied to Moore extends to Roell and Hudson, as Waddleton's proposed causes of action against them are fundamentally different from the excessive force claim.  Our analysis in *In re Conley*,[48] an unpublished decision, is helpful.  We held in that case that it is apparent that a motion to amend to add new defendants that is filed months after the complaint and includes a request to assert new claims against new parties should be denied.[49]

The proposed claim against Jameson relates to the use-of-force incident, but if delay "prejudice[s] the nonmoving party or impose[s] unwarranted burdens on the court," denial of leave is still appropriate.[50]  The district court found that this request—made after the magistrate judge issued his memorandum and recommendations—"was made too late in the proceedings and would unnecessarily delay resolution of this action," burdening both the nonmoving party and the court.  Furthermore, Waddleton's excuse for the

---

[46] *Mayeaux*, 376 F.3d at 427 (emphasis in original).

[47] *See Ganther v. Ingle*, 75 F.3d 207, 211-12 (5th Cir. 1996) (per curiam).

[48] 176 F. App'x 452, 453 (5th Cir. 2006) (per curiam).

[49] *Id.* (citing *Mayeaux*, 376 F.3d at 427-28).

[50] *Mayeaux*, 376 F.3d at 427; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

delay—that he had not yet watched the video—is without merit. He watched the video five months prior to attempting to add Jameson as a party. The district court did not abuse its discretion by denying leave to amend to add Jameson as a party.

## V

### A

Waddleton filed a motion for protection for draft reports and disclosures in response to a court order sealing his medical records. The district court denied the motion as moot. Waddleton took issue with this order because the word "seal" is ambiguous and because he needed the records to prepare his excessive force claim. Yet Waddleton was sent copies of these medical records. The relief sought has already been granted, so the district court properly denied this motion as moot.[51]

### B

Waddleton filed a "motion to forum non conveniens," which is in fact a motion to transfer venue. He asks this court to grant the motion asserting that every judge in the Corpus Christi Division of the Southern District of Texas is biased. This assertion is unsupported by facts or case law. Even though pro se briefs are liberally construed, "*pro se* parties must still brief the issues."[52] Waddleton has inadequately briefed the motion to transfer venue and his argument has been abandoned.

---

[51] *See, e.g.*, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)) ("[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'").

[52] *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam); *see also* FED. R. APP. P. 28(a)(8)(A) ("The appellant's brief must contain . . . the reasons for [his argument], with citations to authorities and parts of the record on which the appellant relies.").

**C**

Waddleton filed a post-judgment motion for record on appeal. The magistrate judge denied the motion as to its request to provide Waddleton a copy of the record and transcripts at the government's expense. Waddleton appealed. In his brief, the only reference to this issue is a sentence stating "[t]he district court again in attempt to be the Record on Appeal continue to deny to follow procedural rules set by the 5th Circuit court of Appeals by repeate[d]ly deny a copy until the Appeal Court issued a[n] order." This does not address whether the district court's ruling was in error. Waddleton's challenge to this post-judgment order is abandoned.[53]

**D**

Waddleton also moved for leave to supplement his brief to add new evidence of retaliation and denial of access to the courts by some prison officials. However, "[a]n appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling."[54] Waddleton's motion to supplement his brief is denied.

\*       \*       \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[53] *See Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (stating that failure to identify an error in the district court's analysis is the same as if no appeal were filed); *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed abandoned.").

[54] *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999).