**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 7, 2011

No. 10-30554
Summary Calendar

Lyle W. Cayce
Clerk

ALEX DAROUICHE,

Plaintiff - Appellant

v.

FIDELITY NATIONAL INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-09209

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

After discovering that Hurricane Katrina had caused flood damage to his property, Alex Darouiche sought payment for the damage under his flood insurance policy with Fidelity National Insurance Company ("Fidelity"). Darouiche was informed, however, that an individual purporting to be him had already received and cashed the proceeds due under the policy. Darouiche then

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30554

sued Fidelity, among others, for negligence. The district court, concluding that Darouiche had not met the prerequisites for bringing suit under the flood policy, granted Fidelity's motion for summary judgment. We affirm.

## I.

Darouiche purchased the residential property at issue, located in Metairie, Louisiana, in 1999. Three years later, he entered a bond for deed to the property with Santos G. Zelaya, and moved out.[1] Under the terms of his agreement with Zelaya, Darouiche agreed to transfer title to the property upon Zelaya's completion of specified payments. The property's flood insurance policy was purchased from Fidelity by Darouiche's mortgage lender, Teche Federal Bank ("Teche"). This policy, a Standard Flood Insurance Policy under the National Flood Insurance Program, was in effect when Hurricane Katrina struck in August 2005.

Darouiche, being away, was unaware for months that Hurricane Katrina had caused flood damage to the property. During Darouiche's absence, and unbeknownst to him, Fidelity opened an automatic claim under the property's flood policy. The flood claim was assigned to an independent adjuster who determined that the amount due was $91,087.21. In March 2006, Fidelity issued a check for that amount, made out to Darouiche and Teche, and mailed it to the Metairie address it had on file for the property. Fidelity then closed the claim, having received no other documentation or claim for further benefits under the property's flood policy.

Approximately five weeks later, an individual purporting to be Darouiche or Darouiche's agent contacted Fidelity and complained that he had not yet received payment for the flood claim. The impersonator, whom Darouiche

---

[1] A "bond for deed" is a "contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." LA. REV. STAT. § 9:2941.

2

No. 10-30554

alleges was Zelaya, requested that Fidelity stop payment on the check, issue a duplicate, and mail the new check to an address in New Jersey. Fidelity promptly complied with these requests. Around the same time, in May 2006, Teche sent a letter to Fidelity asking that Fidelity take certain precautions in paying the flood claim. Teche informed Fidelity that Darouiche's mortgage account was presently in arrears, and that a bond for deed existed between Darouiche and Zelaya. The bank requested that, for these reasons, Fidelity notify Teche and verify the endorsements on the check before it released funds.

In June 2006, Fidelity's reissued check was endorsed by forgery and presented to JP Morgan Chase Bank, N.A., where it was cashed. JP Morgan Chase Bank in turn presented the check to Wachovia Bank, N.A., where Fidelity kept an account. Wachovia, too, accepted the check. By the time Darouiche returned to Louisiana and discovered the flood damage to his property, Fidelity had already paid out the insurance proceeds on his flood claim.

The underlying suit followed. Darouiche sued Fidelity, among others, alleging that the insurer had negligently handled the payment of his flood claim.[2] Specifically, Darouiche alleged that Fidelity was negligent when it reissued the flood claim check without first verifying that Darouiche had made the request. Darouiche also alleged that Fidelity was negligent for not verifying the check's endorsements before releasing funds, as Teche had requested.

Fidelity moved for summary judgment. It argued that because Darouiche had failed to comply with certain prerequisites to filing suit under the flood policy, the suit was barred as a matter of law.[3] The district court granted the

---

[2] Darouiche appeals only the district court's judgment in favor of Fidelity.

[3] Fidelity later sought to amend its summary judgment motion to include a federal preemption argument. The district court, however, denied Fidelity leave to file the amended motion. Because the issue was not properly raised in the district court, we do not consider whether Darouiche's tort claims against Fidelity are federally preempted.

No. 10-30554

motion, and then entered judgment in favor of Fidelity.  Darouiche moved for a new trial, arguing that the district court incorrectly determined that he was precluded from suing Fidelity under the flood policy.  The district court summarily denied the motion, citing the reasons stated in its grant of summary judgment for Fidelity.  This appeal followed.

## II.

As an initial matter, we consider whether Darouiche's notice of appeal in the district court was timely filed.  "The filing of a timely notice of appeal, within thirty days after entry of the court's judgment, is mandatory and jurisdictional." *Kinsley v. Lakeview Reg'l Med. Ctr. LLC*, 570 F.3d 586, 588 (5th Cir. 2009) (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007)).  Given the mandatory nature of this inquiry, we directed the parties to brief this question as a special issue.

Darouiche had 30 days "after the judgment or order appealed from [wa]s entered" to file his notice of appeal in the district court.  FED. R. APP. P. 4(a)(1)(A). The district court entered judgment for Fidelity on January 13, 2010,[4] and entered the order denying Darouiche's motion for new trial on May 14, 2010. When a party timely files a Rule 59 motion for new trial under the Federal Rules of Civil Procedure, the time to file an appeal is tolled until the district court's disposition of that motion.[5]  FED. R. APP. P. 4(a)(4)(A)(v).  Thus, if Darouiche's motion for new trial was timely filed, he had 30 days from May 14, 2010, to file his notice of appeal.  He filed his notice of appeal within those 30 days, on June 11, 2010.  But if Darouiche's motion for new trial was untimely, it "d[id] not toll the running of the thirty-day clock to appeal to this Court." *Vincent v. Consol.*

---

[4] The district court granted Fidelity's motion in an order that was entered on the docket on January 12, 2010.  The district court's judgment in favor of Fidelity, however, though signed on January 12, 2010, was not entered on the docket until January 13, 2010.

[5] Although Darouiche did not specifically invoke Rule 59 in his motion for new trial, we conclude that Rule 59 was the appropriate vehicle for his motion.

No. 10-30554

*Operating Co.*, 17 F.3d 782, 785 (5th Cir. 1994). Whether the notice of appeal was timely—and whether we have appellate jurisdiction—therefore depends on whether Darouiche's motion for new trial was timely filed.

Under the amended version of Rule 59, Darouiche had "no later than 28 days after the entry of judgment" to file his motion for new trial.[6]  FED. R. CIV. P. 59(b).[7]  The district court having entered judgment for Fidelity on January 13, 2010, Darouiche had until February 10, 2010—28 days later—to file his motion. He electronically filed the motion on February 10, 2010, the last permissible day. The district clerk docketed the motion, but deemed it "deficient" because the proposed order that accompanied the motion—required by the local rules for certain motions—appeared in the motion document itself and not as a separate attachment. On February 12, 2010, Darouiche filed a corrected motion that was identical in all respects to the earlier version except for the placement of the proposed order, which was filed as a separate attachment. This corrected motion was filed out-of-time under Rule 59(b). The district court, denying Darouiche's motion "for the reasons enumerated in" its prior order granting summary judgment for Fidelity, did not address whether Darouiche's motion was timely.

We conclude that Darouiche's Rule 59 motion for new trial was timely filed. Although the February 10 motion was deemed "deficient," the complained-of error was based solely on a local rule that requires a proposed order to be electronically filed as a separate attachment.[8]  This local rule applies only to ex

---

[6] The 2009 amendments to the Federal Rules of Civil Procedure became effective on December 1, 2009.

[7] This time constraint is strict: a court "must not extend the time to act under Rule[] . . . 59(b)." FED. R. CIV. P. 6(b)(2). Moreover, it is jurisdictional, and may not be extended by a waiver of the parties. *U.S. Leather, Inc. v. H&W P'ship*, 60 F.3d 222, 225 (5th Cir. 1995).

[8] The "Unique Procedures and Practices for Electronic Filing," which were established by the Eastern District of Louisiana and are part of the "procedures" mandated in Local Rule 5.7, provide that "[p]roposed orders must be submitted in PDF format as a separate attachment to an ex parte/consent motion."

No. 10-30554

parte and consent motions, which Darouiche's motion for new trial was not. Under these circumstances, a conclusion that the minor formatting error in Darouiche's February 10 motion rendered that motion too insufficient to be considered would unjustifiably elevate form over substance.

Moreover, such a conclusion would run afoul of Federal Rule of Civil Procedure 83. Local rules generally have the force of law "as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Kinsley*, 570 F.3d at 589 (quoting *Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008)). Rule 83 states: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." FED. R. CIV. P. 83(a)(2). The local rule implicated here is a requirement of form only. There is no indication that Darouiche's failure to file his proposed order as a separate attachment was willful, and if the local rule is strictly enforced, Darouiche will lose his right to appeal. In accordance with Rule 83, we therefore conclude that Darouiche's February 10 motion was a sufficient and timely motion for a new trial under Rule 59.

Having confirmed our jurisdiction to consider this case, we now turn to the merits of Darouiche's appeal.

### III.

### A.

We review de novo a district court's grant of summary judgment. *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a grant of summary judgment, we view all facts and evidence in the light most favorable to the non-moving party. *Nunez*, 604 F.3d at 844. We may affirm a grant of summary judgment on any

No. 10-30554

legal ground raised in the district court, even if that ground was not the basis for the decision below. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

**B.**

**1.**

Darouiche's flood policy was issued by Fidelity as a participant in the National Flood Insurance Program ("the Program").  Congress created the Program to provide flood insurance at rates that were uneconomical for private companies.[9] *Dwyer v. Fidelity Nat'l Prop. and Cas. Ins. Co.*, 565 F.3d 284, 285 (5th Cir. 2009).  The Federal Emergency Management Agency ("FEMA") administers the Program, and that agency has established, by regulation, a Standard Flood Insurance Policy ("SFIP") under the Program.  *See* 44 C.F.R. § 61.13.  Although the terms and conditions of SFIPs are fixed by FEMA regulations, the policies may be issued by private insurers known as Write Your Own ("WYO") companies.  *Dwyer*, 565 F.3d at 285.  Fidelity issued the flood policy to Darouiche in its capacity as a WYO company.

Darouiche's flood policy is a Dwelling Form SFIP, and its terms and conditions are codified in 44 C.F.R. pt. 61, app. A(1) ("Dwelling SFIP").  No provision in the policy may be changed or waived "without the express written consent of the Federal Insurance Administrator."  Dwelling SFIP, art. VII.D.

In relevant part, the SFIP states that a policyholder may not sue his insurer "to recover money under this policy unless [he] ha[s] complied with all the requirements of the policy."  *Id*. art. VII.R.  The same provision continues: "This requirement applies to . . . any dispute that you may have arising out of the handling of any claim under the policy."  *Id*.  The district court concluded that Darouiche's allegations against Fidelity arose out of Fidelity's handling of the flood claim, and that Darouiche was therefore subject to the pre-suit

---

[9] Congress established the Program by enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq*.  *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

No. 10-30554

prerequisites in Article VII.R. We agree. We must thus consider whether Darouiche complied with all of the requirements in the flood policy. If he did not, then he is barred as a matter of law from suing Fidelity to recover money under the policy.

**2.**

The SFIP, in a section titled "Requirements in Case of Loss," lists a policyholder's duties in instances of flood damage to the insured property. Dwelling SFIP, art. VII.J. Where a policyholder has incurred such flood damage, for instance, he is required to "give prompt written notice" to the insurer. *Id*. art. VII.J(1).

The SFIP also states that a policyholder must send "proof of loss" within 60 days after the loss. *Id*. art. VII.J(4). The proof of loss requirement was altered shortly after Hurricane Katrina, however. On August 31, 2005, the Acting Federal Insurance Administrator, David Maurstad, issued a memorandum ("Maurstad memorandum") that waived the proof of loss requirement for uncontested claims. *Monistere v. State Farm Fire and Cas. Co.*, 559 F.3d 390, 395 (5th Cir. 2009). The memorandum stated that a policyholder no longer needed to file a proof of loss before receiving insurance proceeds. *Id*. If, however, the policyholder "disagree[d] with the insurer's adjustment, settlement, or payment of the claim," the policyholder was required to "submit to the insurer a proof of loss within one year from the date of loss." *Id*.[10]

---

[10] The Maurstad memorandum also stated that where the insurer rejects the policyholder's proof of loss, "the policyholder may file a lawsuit against the insurer within one year of the date of the written denial of all or part of the claim as provided in VII.R." *Monistere*, 559 F.3d at 395.

8

No. 10-30554

**3.**

The district court determined that Darouiche's suit against Fidelity was barred because Darouiche had failed to comply with the notice requirement in Article VII.J(1).   Although it agreed with Darouiche that the Maurstad memorandum had waived the proof of loss requirement, it concluded that the waiver did not extend to the requirement for "prompt written notice." Dwelling SFIP, art. VII.J(1).   Finding that Darouiche failed to provide *any* notice of his claim to Fidelity, the district court concluded that Darouiche was precluded as a matter of law from suing Fidelity.

On appeal, Darouiche raises two arguments that he presented in his motion for new trial.   First, he contends that he complied with Article VII.J(1)'s requirement of "prompt written notice" because Teche, an additional insured under the flood policy, provided Fidelity with written notice of the loss. Specifically, Darouiche asserts that Teche's May 2006 letter to Fidelity—requesting certain precautions in the payment of the flood claim—fulfilled the notice requirement.   In essence, Darouiche argues that because *Teche* fulfilled the notice requirement, *he* has complied with all of the policy's requirements for purposes of Article VII.R.   Notably, Darouiche does not argue that he himself provided written notice of the loss to Fidelity.   Second, Darouiche argues in the alternative that the Maurstad memorandum effectively waived the requirement of "prompt written notice" in Article VII.J(1).

We find Darouiche's extra-textual arguments to lack merit.   As we explained in *Gowland v. Aetna*, "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced."   143 F.3d 951, 954 (5th Cir. 1998).   *See also Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1057 (5th Cir. 2008) ("Under FEMA regulations, strict adherence is required to all terms of the SFIP.").   We must

9

No. 10-30554

therefore, where possible, resolve this appeal on the plain text of the Dwelling SFIP.

The text of Article VII.R reads: "*You* may not sue us to recover money under this policy unless *you* have complied with all the requirements of the policy." The most sensible reading of this provision is that the *plaintiff* is required to comply with the SFIP provisions as a prerequisite to suit. Teche, having never been a party to this suit, cannot furnish the requisite compliance. The proper inquiry is whether *Darouiche* provided Fidelity with prompt written notice of his loss. It is undisputed that he did not.

Additionally, Article VII.D states that the Dwelling SFIP "cannot be changed nor can any of its provisions be waived without the *express written consent* of the Federal Insurance Administrator." The Maurstad memorandum explicitly waived only the proof of loss requirement; it did not purport to waive any other requirement in the Dwelling SFIP. Article VII.D thus mandates the conclusion that the Maurstad memorandum neither changed nor waived the policy's requirement for "prompt written notice." Darouiche was therefore required to show that, prior to suit, he had fulfilled this requirement, and his inability to do so warranted summary judgment for Fidelity.[11]

---

[11] We note that Darouiche's failure to send Fidelity a proof of loss may also support affirmance in this case. The Maurstad memorandum waived the proof of loss requirement for uncontested claims only. We have previously held that a policyholder cannot file a lawsuit seeking *further* federal benefits under a SFIP unless he can show that he sent the insurer proof of loss within the specified one-year period. *See Marseilles Homeowners Condo. Ass'n*, 542 F.3d at 1055–56 (citing *Richardson v. Am. Bankers Ins. Co.*, 279 F. App'x 295 (5th Cir. 2008)). Unlike the policyholders in those cases, Darouiche does not seek additional insurance payments under his policy—instead, he seeks to hold his insurer liable for its handling of his insurance claim. We have not previously addressed whether the proof of loss requirement applies to a plaintiff like Darouiche. But we have stated that a sworn proof of loss is a "condition precedent" to any suit against an insurer under a SFIP. *Marseilles Homeowners Condo. Ass'n,* 542 F.3d at 1055. The application of this broad statement to Darouiche would have required him to file a proof of loss prior to filing this suit.

No. 10-30554

## IV.

For the reasons stated above, we AFFIRM the district court's judgment.