PATRICK E. HIGGINBOTHAM, Circuit Judge:
This is a proceeding to enforce agreed protective orders entered ten years ago. Pursuant to these orders, Ford Motor Company produced a number of Volvo Car Corporation documents that it designated as confidential. After objecting to the confidential status of these documents, plaintiffs distributed and used them in litigation against Ford competitors. Ford moved to protect these documents under the agreed protective orders. Rejecting a claim of waiver, the magistrate judge found the documents to be protected by the agreed orders. The district court upheld the magistrate judge. We AFFIRM.
I
Approximately a decade ago, the district court entered virtually identical agreed *804 protective orders (“Protective Orders”) in Moore v. Ford Motor Company and Bonilla v. Ford Motor Company. The underlying cases settled, but the parties were not required to return confidential documents.
The Protective Orders state, in pertinent part, that:
At any time after the delivery of documents designated “confidential,” counsel for the receiving party may challenge the confidential designation of any document or transcript (or portion thereof) by providing written notice thereof to counsel for the opposing party. If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate, the producing party shall have fifteen (15) days to move for protective order with regard to any discovery materials in dispute, and shall have the burden of establishing that any discovery materials in dispute are entitled to protection from unrestricted disclosure. If the producing party does not seek protection of such disputed discovery materials by filing an appropriate motion with this Court within fifteen (15) days, then the disputed material shall no longer be subject to protection as provided in this order. All documents or things which any party designates as “confidential” shall be accorded confidential status pursuant to the terms of this protective order until and unless the parties formally agree in writing to the contrary or determinations made by the Court as to confidential status.
The Protective Orders also provide that “the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have jurisdiction over the parties and the recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.”
After the Protective Orders issued, Ford produced approximately three and a half banker-boxes of Volvo materials,[1] which it designated as confidential. According to Ford, these materials were not produced at one time, but were instead produced intermittently over the course of discovery.
On May 11, 2004, plaintiffs’ counsel emailed Ford, challenging the confidential status of Volvo documents relating to a presentation allegedly given to the National Highway Traffic Safety Administration, as well as to a European University and local civic groups. Ford responded on June 4, 2004, asking that plaintiffs’ counsel provide the Bates Numbers for the disputed documents so that Ford could directly address plaintiffs’ counsel’s concerns. Additionally, Ford agreed to drop its claim of confidentiality as to 12 documents, which it identified by Bates Numbers.
Plaintiffs’ counsel responded on June 23, 2004, explaining that “the information Ford wanted to remain confidential had been presented to a wide-variety of individuals, including the media, the University, and civic groups by Vovlo.” Plaintiffs then explained that they were “taking the position that all of the materials produced relating to the Volvo XC 90 are no longer confidential and will begin passing them out to any and everyone that is interested.” Approximately one month later, plaintiffs’ counsel emailed Ford, asking “[wjhat’s the word ... on confidentiality issue[?]” Ford replied the following day, explaining;
*805 With respect to the confidentiality issues raised in your earlier e-mail, Ford does not contend that the presentations which appear in the NHTSA docket are confidential, and Ford agrees that you need not treat the presentation referenced at page 157 of Broberg’s deposition ... as confidential. Ford is evaluating your claim that the Autoliv and Volvo materials as a whole should no longer be classified as confidential. Ford expects you to abide by the terms of the Protective Orders in the meantime.
Plaintiffs’ counsel responded, “I gave Ford adequate time. I am sending the materials out. Thanks for trying.” Plaintiffs’ counsel did not identify to which “materials” he was referring.
On February 22, 2005, plaintiffs’ counsel emailed Ford, asking for another update on the “confidentiality issue.” Ford replied by letter on March 8, 2005: “Although Ford disagrees with your arguments in support of de-designating several of the items [identified by Bates Numbers] above, it agrees, in the spirit of cooperation, to officially de-designate (remove from the Protective Order) the above Volvo documents.”[2]
On February 1, 2012, Ford received an affidavit from a plaintiffs expert in an Idaho state court action that provided a document listing Volvo documents produced in the Moore and Bonilla actions. The affidavit explained that plaintiffs’ counsel believed that Ford had waived the confidential status of these documents. Soon thereafter, Ford sought to enforce the Protective Orders in the Moore and Bonilla proceedings where they were originally entered, as well as in Adams v. Ford, a District Court for the Virgin Islands case wherein Ford produced the same documents subject to a similar protective order. The Adams court granted Ford’s motion on March 8, 2012.
On August 24, 2012, the magistrate judge held a hearing on Ford’s motion to enforce the Protective Orders. The parties submitted briefs and presented oral argument. The magistrate judge then issued his ruling. First, he explained that the “purpose of protective orders such as the one entered by Judge Ward in the Moore and Bonilla cases is to facilitate discovery during litigation to allow parties to exchange potentially confidential material with confidence without the Court having to litigate whether or not the material is actually confidential and entitled to protection.” He explained that he would try to “give life to the literal meaning on the orders,” while keeping in mind their purpose. The magistrate judge then found that “the Plaintiff did put the Defendant on notice of a challenge by way of the emails that have been cited of May 11 and June 28.” But he found that “Plaintiff continued thereafter to negotiate, and the matter appeared to have been resolved. There’s no evidence of ... a clear written notice thereafter to Ford challenging the confidential designation of these documents[J” The magistrate judge explained that later “discussion about waiver are not really challenges to the confidentiality of the documents;” instead, these later discussions “are arguments about whether or not some prior activity waived that protection.” The magistrate judge then held that “there is no waiver in this case of the protection of the two protective orders,” and that any issue as to whether a document should be afforded confidential status should be addressed by a court where there is a live claim.
*806 Plaintiffs filed an objection to the magistrate judge’s order with the district court, and moved for leave to depose a corporate representative of Ford. The district court overruled the objection, and denied the motion. Plaintiffs timely appeal.
II
It is axiomatic that “[sjubject to certain exceptions, this court only has jurisdiction over ‘final decisions’ of the district court.”[3] And discovery orders “generally do not end the litigation on the merits and leave nothing for the court to do but execute the judgment.”[4] Here, final judgment has been entered in the original cases,[5] and the appeal of the district court’s order overruling plaintiffs’ objection is properly taken.
A magistrate judge’s non-dispositive order may only be set aside if it “is clearly erroneous or is contrary to law.”[6] Accordingly, we review “factual findings under a clearly erroneous standard,” while “legal conclusions are reviewed de novo.”[7]
Plaintiffs argue that the magistrate judge erred in concluding that Ford did not waive the confidential status of the disputed documents. First, they argue that the plain langúage of the Protective Orders required Ford to move for a protective order within 15 days of a challenge to the confidential status of a document. Thus, plaintiffs argue, Ford had to move for a protective order within 15 days of June 23, 2004, and its failure to do so constitutes waiver. Second, plaintiffs argue that the magistrate judge’s finding that the parties had negotiated and resolved the dispute over confidentiality in 2005 was clearly erroneous.
Analysis begins with the plain language of the Protective Orders,[8] and the “textual interpretation of a court order is ultimately a legal question[.]”[9] At the outset, we note that the Protective Orders are ambiguous and lend themselves to one of two readings. As the magistrate judge — and Ford — read them, the Protective Orders contemplate the following system for challenging the designation of documents as confidential:
(i) “counsel for the receiving party may challenge the confidential designation of any document or transcript (or portion thereof) by providing written notice thereof to counsel for the opposing party[;]”
(ii) “If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate[;]”
(iii) “the producing party shall have fifteen (15) days to move for protective order with regard to any discovery materials in dispute, and shall have the burden of establishing that any discovery materials in *807 dispute are entitled to protection from unrestricted disclosure.”
Put another way, the magistrate judge read the Protective Orders to create a system whereby first a party produces documents and designates them as confidential. The receiving party must then inform the producing party that it disagrees with the confidential designation. The parties must then negotiate between themselves to resolve the dispute. Finally, if the parties are unable to resolve the dispute on their own, only then is the producing party required to move for a protective order within 15 days. Such a system is a sound one, as it provides for the efficient handling of confidential materials, and involves the courts only where the parties have failed to resolve disputes on their own.
Plaintiffs and the dissent argue that the 15 day period for seeking a protective order begins with the notification by the receiving party, not the failure to negotiate a resolution. This interpretation may well be the better reading without more, but the parties understanding of these agreed orders bears upon the interpretation,[10] and the actions of both parties strongly suggest that neither understood the 15 days to run from the date of notification: Ford responded over 20 days after plaintiffs’ initial objection to request additional information, and plaintiffs’ counsel took another 20 days to reply. And although plaintiffs’ counsel suggested that he was sending “the materials out” several months after his initial objection, he continued to negotiate with Ford into the following year, asking for an update on the status of the confidential materials. In short, plaintiffs’ actions in 2004 and 2005 are at odds with their present interpretation of the Protective Orders. Accordingly, we agree with the magistrate judge’s holding that the Protective Orders did not require Ford to seek a protective order until the parties’ own negotiations failed to resolve the dispute.
Turning to the magistrate judge’s factual findings, we cannot conclude that the magistrate judge’s finding that Ford did not waive the Protective Orders is clearly erroneous. Here, Ford produced a number of documents that it designated as confidential. It is undisputed that, at the time of production, these were protected by the Protective Orders until plaintiffs challenged the confidential designation. After receiving the documents, plaintiffs notified, albeit without specificity, Ford that they objected to the confidential status of some of the documents. The parties then engaged in a protracted negotiation, wherein Ford first sought specificity as to which documents plaintiffs’ objected to, and then de-designated a number of documents. At this point, there does not appear to be any further discussion between the parties about whether the documents were properly designated as confidential. Since there were no additional objections to the designation of the remaining documents as confidential, Ford was not required to seek protective orders.
To be sure, plaintiffs and the dissent point to affidavits filed in 2006 and 2009 in other cases, wherein plaintiffs’ counsel claims that Ford has waived confidentiality. But we cannot say that these affidavits constitute “written notice” to “challenge the confidential designation” of these *808 documents. At best, these only put Ford on notice that plaintiffs’ counsel considered Ford to have waived confidentiality, not that the documents were improperly designated as confidential.
Finally, the dissent expresses concern that the magistrate judge’s decision countenances gamesmanship by Ford. Yet, the record in this case demonstrates gamesmanship by both parties: plaintiffs sought to void confidential designations by vague, generalized objections to all the documents, and Ford likely over-designated documents as confidential. Although on de novo review a different outcome may obtain, the magistrate judge’s finding that Ford did not waive the protection of the Protective Orders is plausible and supportable by the record and is not clearly erroneous.[11]
Ill
We review the “discovery decisions of the trial judge ... for abuse of discretion.” [12] Accordingly, a “district court’s discovery decision will be reversed only if it is ‘arbitrary or clearly unreasonable,’ and the appellant demonstrates prejudice resulting from the decision.”[13]
Plaintiffs argue that the district court erred in denying their request for leave to depose Ford’s corporate representatives. In so arguing, they rely on Freeman v. County of Bexar for the proposition that “a district court may ... consider evidence presented for the first time in a party’s objection to the magistrate judge’s recommendation.” [14]
Plaintiffs’ reliance on Freeman is misplaced. At issue there was a report and recommendation, subject to de novo review under Fed.R.Civ.P. 72(b). At issue here is a non-dispositive order subject to Rule 72(a) clear error review. Because the district court’s review of the magistrate judge’s factual findings was limited to clear error review, there appears to be no basis for the district court to have received additional evidence.[15] Accordingly, the district court did not abuse its discretion in denying leave to depose Ford’s corporate representative.
For these reasons, we AFFIRM.

. At the time of document production, Volvo was a wholly owned, indirect subsidiary of Ford.

. Although plaintiffs also offer a May 3, 2006 email, we will not consider this on appeal, as it was not in the record before the magistrate judge, whose factual findings we review for clear error. See Fed.R.Civ.P. 72(a).

. A-Mark Auction Galleries, Inc. v. Amer. Numismatic Ass’n, 233 F.3d 895, 897 (5th Cir.2000) (citing 28 U.S.C. § 1291).

. Id. (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)) (internal quotation marks omitted).

. See R. 970-72 (dismissing case with prejudice pursuant to stipulation of dismissal between the parties).

. Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A) (magistrate judge's nondispositive orders may be reconsidered only "where it has been shown that the magistrate judge’s order is clearly erroneous or contrary to law”).

. Alldread v. City of Grenada, 988 F.2d 1425, 1434 (5th Cir.1993).

. See, e.g., S.E.C. v. Merrill Scott & Associates, Ltd., 600 F.3d 1262, 1272 (10th Cir.2010) (“The starting point for interpretation of a protective order lies in its plain language.”).

. In re Equalnet Comms. Corp., 51 Fed.Appx. 483, 483 (5th Cir.2002) (unpublished).

. Since the Protective Orders are ambiguous in this regard, and given that rules of contract interpretation are applied to agreed orders, see Hartford v. Chase, 942 F.2d 130, 134-35 (2d Cir.1991), "[p]arol evidence — such as the parties' course of performance — may be used to ascertain the intent of the parties...." Addicks Services, Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 294 (5th Cir.2010).

. See, e.g., St. Aubin v. Quarterman, 470 F.3d 1096, 1101 (5th Cir.2006) (“A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.”).

. Fielding v. Hubert Burda Media, 415 F.3d 419, 428 (5th Cir.2005) (citing Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915, 918 (5th Cir.1992)).

. Id. (quoting Mayo v. Tri-Bell Indus., Inc., 787 F.2d 1007, 1012 (5th Cir.1986)) (internal citation omitted).

. 142 F.3d 848, 850-53 (5th Cir.1998).

. See, e.g., Haines v. Liggett Grp., Inc., 975 F.2d 81, 91 (3d Cir.1992) (Under Rule 72(a), "the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact.”).