# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2024

Lyle W. Cayce
Clerk

————————

No. 23-30107

————————

Mary Delores Savoy,

*Plaintiff—Appellant*,

*versus*

Douglas Stroughter, Lieutenant Colonel; Haver Durr, Sergeant,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-463

_____

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:*

For the second time in this prisoner excessive force lawsuit, the plaintiff appeals the entry of summary judgment in favor of the defendants based on qualified immunity. We AFFIRM.

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30107

I

On April 13, 2018, Joseph Savoy ("Mr. Savoy")[1] filed this civil rights lawsuit under 42 U.S.C. § 1983 against two prison employees, Lieutenant Colonel Douglas Stroughter ("Stroughter") and Sergeant Haver Durr ("Durr") ("the Officers"). He claimed that on July 31, 2017, the Officers used excessive force against him during an incident in a hallway of the Dixon Correctional Institute, where he was a prisoner, in violation of his rights under the Fourth and Eighth Amendments.[2]

Plaintiff primarily relies on allegations contained in her unsworn complaint[3] and an affidavit from Leopold LaCoste ("LaCoste affidavit"), an inmate present during the incident. In relevant part, the LaCoste affidavit states:

> While speaking [with Stroughter] we heard [Durr] start badgering [Mr. Savoy], who was sitting quietly in the hallway across from the office in his wheelchair. [Durr] kept harassing [him] until she got him to respond by saying something like "stop cussing me" [sic]. The situation got louder and [Stroughter] went to the hallway and told [Mr. Savoy] to just "shut-up and calm down." [Mr. Savoy] tried to tell [Stroughter] to get [Durr] away from him. Then [Stroughter] put his hand in [Mr. Savoy's] face at which point [Mr. Savoy]

---

[1] Mr. Savoy passed away on December 3, 2018, and his mother, Theresa Savoie, was substituted in his place. She passed away on March 11, 2020, and Mr. Savoy's sister, Mary Dolores Savoy, was substituted in her place. Theresa Savoie and Mary Dolores Savoy are both referred to as "Plaintiff."

[2] Plaintiff also brought retaliation claims under the First Amendment but expressly abandoned them.

[3] The allegations from the complaint are based on statements Mr. Savoy made in an Administrative Remedy Procedures report ("ARP") after the incident. The district court found that the ARP was inadmissible hearsay, however, and Plaintiff did not appeal this evidentiary ruling.

> lifted his arm—the one not in a sling—to deflect [Strougher's]
> hand. Then [Strougher] hit him twice before knocking him out
> of his wheel chair [sic] and continuing to hit him repeatedly
> while he was down on the floor. [Durr] actually kicked
> [Mr. Savoy] in the head while he was on the ground.

Plaintiff did not present any affidavit, sworn statement, or deposition testimony provided by Mr. Savoy before his death.

A surveillance camera partially captured the incident. The relevant part of the video, which has no sound, shows Mr. Savoy in a wheelchair making his way down a hallway. He stops and turns the chair in the hallway to face offices. Durr later crosses his path and walks out of view. Two minutes later she walks back to the hallway where Mr. Savoy is sitting, the two appear to have a verbal interaction, and she moves out of view. When the recording resumes 20 seconds later, the Officers are standing directly in front of Mr. Savoy, and Strougher's arm is extended out towards Mr. Savoy's left upper body. Mr. Savoy forcefully pushes away Strougher's arm, uses both arms to stand up from the wheelchair, and then quickly raises a hand towards Strougher. Strougher uses both arms to pin Mr. Savoy against the wall and Mr. Savoy abruptly pushes Strougher's arms off him. Mr. Savoy and the wheelchair fall backwards. Strougher's back is turned away from the camera, partially obstructing the camera's view of the altercation. Mr. Savoy is positioned between the Officers; Strougher is struggling with him to his right, and Durr is on his left assisting Strougher for about 30 seconds before leaving the area. Strougher and Mr. Savoy struggle for approximately 50 seconds during which Strougher makes three striking motions before another officer helps restrain Mr. Savoy. Captain Douglas McDonald ("McDonald") walks over to the Officers, stands over them, and the video ends. When the video resumes after 76 seconds, Mr. Savoy is calmly lying on the floor, and an officer has his foot on his back while another officer does

something undiscernible near his lower back. The officer removes his foot, and Mr. Savoy remains on the floor. The entire altercation lasted less than two minutes. Eventually, Mr. Savoy is lifted onto a stretcher, where he remains for a short time, talking to other inmates and smiling as he is being carried away.

On February 17, 2020, nearly ten months after the video had been produced to her, and six months after the July 2019 deadline for completing discovery, Plaintiff moved to compel production of portions of the video that she claimed had been intentionally withheld. The video footage was produced to Plaintiff in nine individual clips, with gaps in time between some of them. Plaintiff's counsel contended that she "immediately reviewed" the video clips but did not notice the gaps until February 11, 2020. A magistrate judge denied the motion as untimely, and Plaintiff objected to the ruling.

On March 11, 2020, the Officers moved for summary judgment based on qualified immunity. Plaintiff filed her opposition to the motion on April 7, 2020. Without resolving Plaintiff's objections to the denial of her discovery motion, on March 25, 2021, the district court granted the Officers' summary judgment motion based on qualified immunity.

On appeal, we vacated the judgment and remanded for consideration of Plaintiff's objections because it was "plausible that" a favorable ruling "would affect the summary judgment ruling." *Savoy v. Stroughter*, No. 21-30170, 2022 WL 686324, at *2 (5th Cir. Mar. 8, 2022) (unpublished). On remand, the district court conducted a hearing and overruled the objections because the motion to compel was untimely, and it re-entered judgment in favor of the Officers. This appeal followed.[4]

---

[4] Plaintiff also brought related claims under state law. Initially, the district court declined to exercise jurisdiction over those claims after disposing of the Section 1983 claims

No. 23-30107

## II

Plaintiff first argues that the district court abused its discretion by overruling her objections to the magistrate judge's denial of the motion to compel production of missing video footage.

We review discovery decisions for abuse of discretion. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005). A district court abuses its discretion "only if it[s] [decision] is 'arbitrary or clearly unreasonable,' and the appellant demonstrates prejudice resulting from the decision." *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014) (quoting *Fielding*, 415 F.3d at 428).

Plaintiff received nine video clips of the incident on April 10, 2019, but her counsel did not notice gaps between some of the clips until February 11, 2020. Plaintiff moved to compel production of the missing video footage nearly six months after the close of discovery. The magistrate judge denied the motion to compel as untimely under Local Rule 26(d)(1) of the U.S. District Court for the Middle District of Louisiana, which provides: "Absent exceptional circumstances, no motions relating to discovery . . . shall be filed after the expiration of the discovery deadline, unless they are filed within seven days after the discovery deadline and pertain to conduct occurring during the final seven days of discovery." The district court overruled Plaintiff's objections to the magistrate judge's ruling.

"Local rules generally have the force of law 'as long as they do not

───────────────────────

and dismissed them with prejudice. On appeal, the parties agreed the state law claims should have been dismissed without prejudice. This Court vacated that judgment. On remand, the district court dismissed the state law claims without prejudice. Plaintiff again appeals the dismissal of the state law claims but fails to brief the issue. The issue is accordingly forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution.'" *Darouiche v. Fid. Nat'l Ins. Co.*, 415 F. App'x 548, 552 (5th Cir. 2011) (per curiam) (quoting *Kinsley v. Lakeview Reg'l Med. Ctr. LLC*, 570 F.3d 586, 589 (5th Cir. 2009)). "[W]e normally defer to a district court's construction of its own rules," but "we are not obliged to accept a construction that renders a facially innocuous rule inconsistent with the Federal Rules." *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 707 (5th Cir. 1985).

Plaintiff points to no source of law conflicting with Local Rule 26(d)(1), concedes that the motion to compel was untimely, and does not argue that exceptional circumstances prevented a timely filing.[5] She presents no basis to conclude that the district court abused its discretion by following Local Rule 26(d)(1).[6]

III

Plaintiff next challenges the district court's grant of summary judgment on three grounds: (1) the district court failed to view the evidence in her favor by not considering essential video footage of the July 2017

---

[5] Plaintiff also argues that the district court abused its discretion by overruling her objections as untimely because, after the remand, "the Trial Court ordered [her] to refile the motion to compel and set a new deadline, which was met." She did not file a motion to compel, however; she only refiled her objections to the magistrate judge's order.

[6] Plaintiff raises a spoliation issue on appeal, arguing that she is entitled to a legal presumption that the video footage has been altered. Although she raised the issue in various filings at the district court, she did not explain why the elements of spoliation were satisfied and did not appeal any district court order deciding the issue. Under our precedent, this is likely enough to hold that she forfeited a spoliation argument. *See Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))); *Rollins*, 8 F.4th at 397. Regardless, the elements of spoliation are not satisfied. *See Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020).

No. 23-30107

incident before ruling on the Officers' summary judgment motion; (2) the district court erred by generally failing to make all reasonable factual inferences from the evidence in the light most favorable to her; and (3) genuine disputes of material fact preclude summary judgment.

A

Citing comments during a post-remand discovery hearing,[7] Plaintiff alleges that the district court failed to consider essential video footage of the July 2017 incident before ruling on the Officers' summary judgment motion. The record does not support Plaintiff's claim.

Because both parties called the footage to its attention in their summary judgment briefing, the district court had a responsibility to look at the video. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 nn.7–8 (5th Cir. 1992) (per curiam). Indeed, video footage of the incident may be the most probative evidence in assessing an excessive force claim at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 379–81 (2007).

In its order granting summary judgment for the Officers, dated March 25, 2021, the court expressly stated that it had "[v]iew[ed] the *admissible evidence* and facts in the light most favorable to Plaintiff." It is undisputed that the video evidence was admissible and in the record at the time.[8]

_____

[7] The hearing was held to determine whether exceptional circumstances existed to excuse Plaintiff's untimely motion to compel. She argued that the videos have gaps in the footage that are difficult to discern and that the defendants failed to produce all the video surveillance in their possession. The Officers denied that any additional footage existed and explained that the surveillance camera—a motion-detecting camera—was in a different room than where the altercation occurred and consequently only picked up portions of the incident.

[8] The district court even referenced the video in its opinion stating, "The video has no audio, and does not show the initiation of the confrontation."

Plaintiff points to two statements made during the post-remand discovery hearing, which was conducted over a year and five months after the summary judgment ruling. First, the court said, "Of course I haven't seen the video, but I have read all of the pleadings." Later in the hearing, the court stated, "What does that have to do with anything? It's not my responsibility to look at the video." At the start of the hearing, however, the court stated:

> This matter is before the court on a motion to reconsider the ruling of the magistrate court denying a motion to compel. . . . So we're here today for one matter. We will not get into the substance of the court's prior ruling; that is the ruling on the motion for summary judgment. . . . We are here solely to take up the issue of whether the magistrate judge erred in its ruling denying your motion to compel. Let me assure you . . . that I've read all of your pleadings. Of course I haven't seen the video, but I have read all of your pleadings.

During the hearing Plaintiff's counsel said, "Judge, *on the timeliness issue*, Your Honor yourself mentioned that you hadn't looked at the video yet," to which the court responded,

> What does that have to do with anything? It's not my responsibility to look at the video. My responsibility is to determine whether there are exceptional circumstances [that justify Plaintiff's lack of timeliness]. That's it. I've already reviewed . . . all the evidence that was before the Court for the motion for summary judgment.

When answering the court's question about the significance of the videos, Plaintiff's counsel clarified that had the court watched the videos, it would have known that the "skips in the video are very difficult to discern." This context shows that the district court was merely explaining that it need not review the video to determine whether Plaintiff's motion to compel was timely. Nevertheless, at the end of the same evidentiary hearing, the district court reassured counsel that it would "take a hard look at the video."

Almost three months later, the district court overruled Plaintiff's objections to the magistrate judge's order and re-entered summary judgment for the Officers. Nothing in the record indicates that we should not take the district court at its word that it would—and did—review the video to rule on the summary judgment motion. *See Armstrong v. Ashley*, 918 F.3d 419, 423 (5th Cir. 2019).

B

Plaintiff argues that the district court failed to view the evidence in her favor by "adopting" the Officers' factual assertions and that it improperly found that the Officers were entitled to qualified immunity because genuine disputes of material fact precluded summary judgment.

We review the grant of a motion for summary judgment *de novo*, applying the same standards as the district court. *Lozano v. Schubert*, 41 F.4th 485, 491 (5th Cir. 2022). That means we view the evidence in the light most favorable to the nonmoving party and only affirm a grant of summary judgment when "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

A qualified immunity defense alters the typical burden of proof on summary judgment. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once an official pleads the defense, the burden shifts to the plaintiff to rebut it. *Id.* A plaintiff may not merely deny material facts or rely on unsworn allegations in the pleadings to defeat summary judgment; she must cite to specific parts of admissible materials in the record. Fed. R. Civ. P. 56(c). The official has no burden to put forth evidence of his own. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir. 2000). But all inferences are still drawn in the plaintiff's favor. *Brown*, 623 F.3d at 253. To determine whether qualified immunity applies, we ask: "(1) whether an

No. 23-30107

official's conduct violated a statutory or constitutional right of the plaintiff; and (2) whether the right was 'clearly established' at the time of the violation." *Baker v. Coburn*, 68 F.4th 240, 245 (5th Cir. 2023), *as revised* (May 19, 2023).

The reviewing court "should be permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[9]

To determine whether a prison official violated an inmate's rights by using excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). "We focus on the prison official's 'subjective intent' and determine it 'by reference to the well-known *Hudson* factors.'" *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016)). Those factors are "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Id.* (quoting *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)). Plaintiff appears to challenge the district court's findings on all five.

---

[9] Plaintiff argues that the district court erred by not "adjudicating only the legal question of [whether] the right was clearly established" and instead, also undertaking the analysis of the first prong of the qualified immunity analysis. This argument fails. *See Pearson*, 555 U.S. at 236.

10

No. 23-30107

Although courts must generally view the evidence in the light most favorable to the nonmoving party, where video evidence contradicts that party's version of events, we must "view[] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 381. Put differently, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. This is because, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

1

The first Hudson factor is the extent of the injury suffered. Because the district court found in Plaintiff's favor on this factor, we will not address it.

2

The next factor is the need for the application of force. In support of their summary judgment motion, the Officers presented evidence, including video, deposition testimony, and affidavits, that they believed it was necessary to use force to restrain Mr. Savoy because he was being verbally disruptive and refused several direct orders to be quiet, he struck Stroughter's hand, and he rose from his wheelchair and became combative with Stroughter. In response, Plaintiff primarily relied on the allegations in her unsworn complaint that the Officers threatened to kill Mr. Savoy and gratuitously attacked him in retaliation for his participation in a prior lawsuit against other correctional officers.

Both parties agree that a verbal exchange between Mr. Savoy and Durr triggered the altercation, but the LaCoste affidavit is silent on whether the

Officers threatened Mr. Savoy, and the video does not show the initial verbal interaction between all three parties. Plaintiff has failed to identify any admissible evidence that the Officers threatened Mr. Savoy.[10]

To show that there was no need for force because Mr. Savoy did not strike Stroughter's hand or rise from his wheelchair to confront him, Plaintiff points to screenshots of the video surveillance showing Mr. Savoy sitting in his wheelchair with the Officers standing over him. The actual video surveillance, however, shows Mr. Savoy quickly pushing away Stroughter's arm, standing up from the wheelchair, and getting only inches away from Stroughter's face.[11] Where, as here, video evidence contradicts the nonmoving party's evidence, we must view the evidence "in the light depicted by the videotape." *See Scott*, 550 U.S. at 381. Because Plaintiff's version of events is belied by the video, she failed to identify evidence creating a genuine dispute of material fact, *see id.* at 380, and failed to carry her summary judgment burden with respect to the need for an application of force.

3

The third factor is the relationship between the need for force and the amount of force used. The Officers presented evidence, including video and affidavits, that, contrary to Plaintiff's assertions, Stroughter did not wantonly punch Mr. Savoy in the face, but only pushed Mr. Savoy's arms down to restrain him because he resisted Stroughter's efforts to regain control. To establish that Mr. Savoy was not resisting, Plaintiff points to McDonald's

---

[10] Plaintiff relies on the inadmissible ARP to substantiate this claim. *See supra* note 3.

[11] The LaCoste affidavit also states that Mr. Savoy "lifted his arm . . . to deflect [Stroughter's] hand."

deposition testimony. When asked whether Mr. Savoy was moving when he was on the ground, McDonald responded, "I can't tell at this point."[12] The LaCoste affidavit indicates that once on the ground, Stroughter hit Mr. Savoy repeatedly, and Durr kicked him in the head. Durr's legs are not visible during the 30 seconds she appears to be helping Stroughter, so we consider this evidence in the light most favorable to Plaintiff.

Nevertheless, the LaCoste affidavit is silent on whether Mr. Savoy was resisting. The surveillance video shows Mr. Savoy's arms flailing in different directions while he is on the ground. It also shows Mr. Savoy's wheelchair, which is lying immediately next to him and Stroughter, moving and shifting as the struggle ensues. The video does not show Mr. Savoy or Stroughter being relatively still until about a minute later, when another officer appears to help Stroughter restrain Mr. Savoy.[13] Because the video shows Mr. Savoy's resistance, and Plaintiff failed to identify any evidence that Durr and Stroughter's use of force was gratuitous or malicious, she did not identify a genuine factual dispute with respect to the relationship between the need for force and the amount of force used. *See Hudson*, 503 U.S. at 9 ("Not every malevolent touch by a prison guard gives rise to a federal cause of action."); *see also Scott*, 550 U.S. at 380–81.

---

[12] Notably, McDonald was watching the video surveillance during the deposition. The video shows him entering the building over a minute after the altercation occurred. When he arrived, Stroughter and Mr. Savoy were already on the ground and several officers had gathered around them further obscuring the camera's view. It is unclear whether he was answering the question as someone who was watching the video surveillance, or from his perspective on the day of the incident.

[13] The LaCoste affidavit states that Stroughter hit Mr. Savoy twice before knocking him out of his wheelchair. The video does not show Stroughter strike Mr. Savoy, only pinning him against the wall before he falls backwards.

4

The fourth factor is the threat reasonably perceived by the responsible prison officials. The Officers presented evidence that Mr. Savoy was "clearly agitated," cursed at and verbally threatened Durr, stood up from his wheelchair and confronted Stroughter, and shoved his hands away. To show that Mr. Savoy could not be perceived as threatening, Plaintiff points us to the video, asserting that nothing suggests that Mr. Savoy was being aggressive, and McDonald's testimony. When asked whether he saw anything that indicated that Mr. Savoy was threatening someone with physical force, McDonald responded, "I couldn't tell what he was doing, no ma'am."

McDonald's testimony and the video do not establish a genuine dispute of material fact. A prison official could reasonably perceive Mr. Savoy's actions, displayed in the video, as threatening because he did not comply with the Officers' instructions, aggressively stood up to confront Stroughter, and shoved away Stroughter's hands more than once. *See, e.g.*, *Byrd*, 48 F.4th at 348 (affirming summary judgment for prison officials where inmate failed to comply with officers' instructions, resisted when officers attempted to restrain him, and the incident would not have occurred but for inmate's violent resistance). Plaintiff adduces no evidence creating a factual dispute with respect to the Officer's reasonable perceptions, so she has failed to carry her burden as to this element.

5

The final consideration is any efforts made to temper the severity of force. The evidence of record indicates that Mr. Savoy was given verbal warnings before the altercation became physical, and Plaintiff points to no evidence showing that Stroughter and Durr unreasonably escalated or unnecessarily continued their use of force against Mr. Savoy. She has failed

No. 23-30107

to establish a genuine dispute of material fact with respect to the efforts made to temper the severity of force.

In conclusion, the record shows no constitutional violation on the part of the Officers. Accordingly, Plaintiff has not shown that the district court erred in granting summary judgment on her excessive force claim based on qualified immunity.

IV

We AFFIRM the denial of Plaintiff's motion to compel and the judgment of the district court.