# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 3, 2025

Lyle W. Cayce
Clerk

———————

No. 24-40580

———————

UNITED STATES OF AMERICA, *ex rel*, MICHAEL J. FISHER,

*Plaintiff*,

OCWEN LOAN SERVICING, L.L.C.; OCWEN FINANCIAL CORPORATION,

*Defendants—Appellants*,

*versus*

BOYD & ASSOCIATES; SAMUEL L. BOYD,

*Movants—Appellees*,

CONSOLIDATED WITH

———————

No. 24-40581

———————

UNITED STATES OF AMERICA, *ex rel*, MICHAEL J. FISHER,

*Plaintiff*,

OCWEN FINANCIAL CORPORATION,

*Defendant—Appellant*,

*versus*

Samuel L. Boyd; Boyd & Associates,

*Movants—Appellees.*

———————————————————

Appeals from the United States District Court
for the Eastern District of Texas
USDC Nos. 4:12-CV-543, 4:12-CV-461

———————————————————

Before Smith, Dennis, and Richman, *Circuit Judges.*

Per Curiam:[*]

In earlier False Claims Act litigation between these parties, the district court entered identical protective orders governing discovery. The question in the instant appeal is whether those orders bar a party from producing back to its opponent documents that the opponent had produced under the orders in the prior suit. The district court ruled that they do. We disagree and therefore REVERSE and require Boyd[1] to return all documents and destroy none.

## I

In two prior disputes between these parties—the "*Fisher*" matters—the district court entered identical protective orders to facilitate discovery. *Fisher* consisted of two *qui tam* FCA suits brought by Boyd on behalf of relator Michael Fisher, alleging fraud and misconduct by Ocwen[2] and others in connection with the federal Home Affordable Modification Program.

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Samuel L. Boyd and Boyd & Associates (collectively, "Boyd").

[2] Ocwen Financial Corporation and Ocwen Loan Servicing, L.L.C. (collectively, "Ocwen").

24-40580
c/w No. 24-40581

The protective orders govern the use and production of "Protected Information," defined as documents designated confidential by the producing or "Designating Party" and disclosed to another "Receiving Party":

> Documents . . . containing Confidential Information disclosed or produced by any party, or non-party, in this litigation are referred to as "Protected Information." Except as otherwise indicated below, all documents or discovery responses reasonably designated, in good faith, by the producing party or non-party ("Designating Party") as "Confidential" and which are disclosed or produced to counsel for another party ("Receiving Party") to this litigation are Protected Information and are entitled to confidential treatment as described below.

Paragraph 4 restricts the use of Protected Information in the *Fisher* litigation or matters arising from it:

> Protected Information shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose other than matters arising from the litigation of this matter, as provided below.

Paragraph 5 contains a similar restriction and further cabins the disclosure of Protected Information to a defined list of "Qualified Persons," which included counsel for the Receiving Party but not the Designating Party itself:

> Protected Information may be disclosed only to the following persons ("Qualified Persons"):
>
> (a) Counsel of record in this action for the Receiving Party (including attorneys for the United States who are monitoring the litigation);
>
> . . .
>
> Protected Information shall be used solely for the purposes arising from the litigation of this action.

3

Finally, Paragraph 15 requires the Receiving Party to destroy or return Protected Information back to the Designating Party following *Fisher*'s termination, while permitting retention of attorney work product that referred or related to such information:

> Upon termination of this action . . . counsel for the Receiving Party shall destroy or return the Protected Information to the counsel for the Designating Party within ninety (90) days of termination of the litigation. The Receiving Party shall keep their attorney work product which refers or relates to any Protective Information. Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Information.

With the protective orders in place, Ocwen produced more than 23 million pages of documents during *Fisher*.

The parties settled *Fisher* in 2017, and the court dismissed the lawsuit with prejudice but retained jurisdiction to enforce the still-operative protective orders. And evidently for good reason: Boyd kept numerous documents culled from Ocwen's *Fisher* productions.

In 2019, Boyd filed another *qui tam* FCA action on behalf of former Ocwen employees, again alleging that Ocwen and others committed fraud and misconduct in connection with the federal Home Affordable Modification Program. After learning of that suit in 2021, Ocwen sued Boyd in Texas state court for allegedly breaching the *Fisher* settlement agreement.

In the ordinary course of litigation, Ocwen learned that Boyd had shared *Fisher* Protected Information with federal law enforcement investigators and requested Boyd produce all Ocwen-related materials Boyd provided, as well as any subpoenas and responses. Boyd resisted production, but the state court authorized limited discovery, including Ocwen's request for its materials that Boyd had shared with federal investigators. Only then

did Boyd invoke the *Fisher* protective orders and move to stay discovery. At a hearing, the state court indicated the materials were relevant but, because the *Fisher* orders issued from federal court, it would defer to the issuing court for authoritative interpretation.

Boyd moved the federal district court to enforce the *Fisher* orders defensively to prevent disclosure of Ocwen-designated Protected Information back to Ocwen. Boyd prevailed: the court concluded that the protective orders barred Boyd from producing Ocwen-designated materials back to Ocwen because it, as the Designating Party, is not listed among Paragraph 5's "Qualified Persons." This timely appeal followed.

## II

The "textual interpretation" of a protective order "is ultimately a legal question," reviewed de novo. *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quoting *In re Equalnet Comms. Corp.*, 51 F. App'x. 483 (5th Cir. 2002) (table)). "The starting point for interpretation of a protective order lies in its plain language." *Id.* (citing *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010)).

The instant dispute turns on our interpretation of four provisions:

**Paragraph 1**: Material becomes Protected Information when designated confidential by the "Designating Party" and produced to the "Receiving Party";

**Paragraph 4**: Protected Information may be used or disclosed only for matters arising from *Fisher*, "as provided" in the orders' provisions "below," and may not be disclosed for any other purpose;

**Paragraph 5**: Disclosure of Protected Information is restricted to a defined list of "Qualified Persons," which included counsel for the Receiving Party but not the Designating Party; and

5

> **Paragraph 15**: The Receiving Party is required to destroy or return Protected Information to the Designating Party within 90 days of termination of the *Fisher* litigation.

Boyd reads Paragraph 5's closed list of Qualified Persons to set the complete universe of permissible recipients. And because counsel for the Designating Party does not appear on that list, Boyd contends production to Ocwen's counsel is forbidden. Under that view, Paragraph 15 imposes only a custodial duty at the end of the case and cannot expand who may receive Protected Information. Ocwen reads Paragraph 15 as a specific, post-termination authorization to deliver Protected Information "to the counsel for the Designating Party," to which the earlier, general Qualified Persons constraint must yield.

The orders' plain text does not support Boyd's interpretation. Paragraph 5's "Qualified Persons" list limits disclosure of Protected Information while *Fisher* was pending. Paragraph 15 then functions as a specific, later-in-order directive governing the post-termination period and expressly contemplates the Receiving Party to "destroy or return the Protected Information to the counsel for the Designating Party." Paragraph 4's "as provided below" text confirms that the later provisions qualify the earlier general rules. Giving effect to all clauses, the orders authorize the return of Protected Information to the producer's counsel after termination of the litigation. *See Claimant ID 100218776 v. BP Expl. & Prod., Inc.*, 712 F. App'x 372, 375 (5th Cir. 2017) (favoring interpretation that gives effect to every clause and prevents a general provision from undermining a narrower, specific provision). Strictly importing Paragraph 5's Qualified Persons list into that post-termination procedure would nullify Paragraph 15 and frustrate compliance. And, critically, the district court's orders confirm that Boyd neither destroyed nor returned Ocwen-designated Protected Information it produced during the *Fisher* dispute.

We are also mindful that a protective order "must be interpreted 'to comply with common sense' and in a manner that 'connect[s] its prohibitions to its purpose.'" *Static Media LLC v. Leader Accessories LLC*, 38 F.4th 1042, 1048 (Fed. Cir. 2022) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Here, the protective orders are aimed at preventing competitive harm from *public dissemination* of Protected Information, not at fencing off a producing party from its own documents. Authorizing return of Protected Information back to the Designating Party's counsel at the end of the case serves that common-sense purpose.

By contrast, Boyd's "literalism would here produce a result that makes no or little sense" that counsels against "making a pronouncement that the parties intended a senseless result." *Motor Vehicle Cas. Co. v. Atl. Nat'l Ins. Co.*, 374 F.2d 601, 605 (5th Cir. 1967); *see also United States v. Winstar Corp.*, 518 U.S. 839, 907 (1996) (avoiding a contract interpretation that "would be absurd"). Taken to its end, Boyd's reading would: (1) convert Paragraph 15's mandatory "return . . . to the counsel for the Designating Party" into an instruction that cannot be obeyed because the Designating Party's counsel is not on Paragraph 5's list; (2) imply that Boyd risks sanctions for disclosing to Ocwen the very documents it marked confidential, produced to Boyd, and now requests; and (3) allow a party to resist targeted discovery in later litigation by invoking a protective order that binds only the receiving party in an earlier case—an "absurd tenet" courts have rejected. *See Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981). We therefore reject Boyd's interpretation.

7

24-40580
c/w No. 24-40581

## III

For the foregoing reasons, we REVERSE and require Boyd to return all documents and destroy none.[3]

---

[3] JUDGE DENNIS dissents with respect to requiring Boyd "return all documents and destroy none" because Ocwen did not request this relief on appeal.